Good morning. I'm Richard Walker. I'm an assistant federal public defender in the Northern District of West Virginia. I represent Johnny Edgell. He's an inmate in Ohio. He was convicted for methamphetamine charge and a firearms charge. We're here because Johnny Edgell had a plea agreement and the government breached it. We're asking the court to exercise its discretion and impose specific performance of our original plea agreement. So the bottom line is Johnny Edgell negotiated for a plea agreement that requested and supported a sentence in the area of 10 months. We asked for probation, but there was a 10-month plea agreement contemplated. And after the government disclosed new evidence that without any notice to the defense, the district court sentenced Johnny to 30 months. So three times. Let me ask you this. Your cause has a lot of appeal, but I'm not sure. The plea agreement basically assumes that the meth was in just a part of a substance as opposed to pure meth. And both parties assume that the meth went to the lab. But we agreed to it. Agreed to it. That's okay. You agreed to it. But as you know, the sentencing guidelines expressly require the U.S. attorney to provide accurate information to the court for sentencing. It's 6B1.4. And the U.S. attorney, when he learned of the evidence, you can't let the district judge, you can't agree to a fact that's a false fact. So when they learn that it's pure meth, they let the judge know. But the problem, I think, in this case is not that they breached. They didn't do anything that they agreed that it was the lower level meth. And you asked for specific performance. But all you can, all they can say is they agreed that and they'll abide by that for purposes of their recommendation on sentencing. But now you have the district court that has the real fact. And Judge Keeley in this case was, made the observation that she thought the case was more serious than what the parties had agreed to. And you know what she did. The injustice comes, it seems to me, from a mutual mistake of fact between you and the defendant. And maybe the answer is to vacate the plea agreement. But I don't think specific performance helps you a bit because all you can do is to instruct the U.S. attorney to do something different. And so they get up before the court and say, we agree to the false fact, Your Honor. We'll take it. Okay. They say that. But Judge Keeley recognized that because the U.S. attorney made a full explanation of what happened, a very accurate one, saying we assumed it was the diluted meth and the lab came back and showed us pure meth and we just let you know. And that's an obligation the U.S. attorney has explicitly in the guidance. And the court should not be sentencing on false facts. But you are, your injustice comes from the fact that you entered into an agreement based on the fact that it was meth and the government agreed. So both of you were under a mistaken belief when you entered into that plea agreement. And the question in my mind is, what is the appropriate remedy? And I don't think you gain anything to force the government to say something because Judge Keeley still has the free reign to do what she wants. And she expressed her own dissatisfaction with that agreement in the hearing. Now, you can have her express it again and have the government say, we stick by our plea agreement, but I don't think that helps you. I think your remedy is to vacate the plea agreement and start over with the real facts. We'll take it. I agree. I agree. Now, let me just, don't jump too quickly. The plea agreement, vacating the plea agreement exposes you to relitigation, renegotiation, and all that. And maybe you're entitled to that. Maybe your client wants that. I only caution you that you ought to be sure that that's what your client wants. Well, that would be acceptable to the defense. I think that Mr. Edgell would have preferred to proceed to trial rather than receive a sentence of 30 months, which is almost what he would have received had he gone to trial. He's not satisfied with this agreement. I understand. I think both parties were caught off guard. The lab had not come back and you negotiated this deal on the basis of meth. He clearly did not negotiate this agreement on the basis that it was pure meth. I agree. And so there's some justice that has to be done for him. And my view is, what's the remedy? I agree. And I think he should have an opportunity to return to the district court and make that decision before a district court judge and determine once and for all whether, in fact, he would like to exercise his right to withdraw the plea agreement and proceed to trial. I think he would have to do that on his own in person before the district court. It would be a different district court judge? The specific performance that you are asking and that we generally grant is that there would be a resentencing before a different district court judge? I agree. If it's specific performance, that would be the remedy. Then the case law would require... Why don't you want specific performance, which is what I thought you wanted. We do. We'll send this to a different judge. Healy may have views about this, but that's not who's going to be sentenced. We're asking for specific performance. Johnny Edgell wants a 10-month sentence so that he can be released from prison. He wants the benefit of his bargain, which was denied to him here. The danger in that is we would be forcing the U.S. attorney to say to a new district judge that this was not pure meth when he knows it. You may want to take a look at the government's duty under 6b.1, but the government has to provide accurate information to the court. Now the government knows that the information is inaccurate and the new district judge is now faced with the fact that the agreement says you can go ahead and they can say we're bound by this agreement. We accept the agreement based on the fact we understood that and we'll stick by the agreement and the recommendations. But the new district judge has to be sentencing on the basis of what the record actually says. We've never advocated to conceal any fact. I want that to be clear. Oh, I know. Nobody did. Nobody did. What I wanted... Let me just pile on to this because this was my question. I assume, but maybe I'm wrong, I assume that what you want is the right to go to a new district court judge, the new district court judge will be informed of the lab report, but this time the U.S. attorney instead of recommending a sentence flatly inconsistent with the plea agreement will recommend that the plea agreement, the 10-month sentence be adhered to, notwithstanding the accurate information about the meth. Yes. I want the government to fight for our plea agreement just like I fought for the plea agreement. I thought at sentencing, I understand the government made the disclosure and I have the lab report here. It's not part of the record. It's one page with the new information that we believe is accurate. I understand that disclosure. I think that was done in good faith. I don't know that it was required under the guidelines because I don't think the guidelines can authorize the government to breach a plea agreement. Be that as it may, I understand the intent there and I never criticized the government or Mr. Warner for making that disclosure, but what I fully expected is for a prosecutor to fight for our plea agreement and honor our plea agreement at the sentencing hearing and the opposite happened. Ms. Wesley came to the sentencing hearing and she just threw up her hands. She said, this is a calamity. It's rare. It's unfortunate. We don't like to see this happen, but judge, go ahead and sentence Mr. Edgell to the bottom of the guidelines based on ICE, based on pure methamphetamine and that's improper. Even the probation officer in this case suggested in the pre-sentence report, that's at page 189 of the joint appendix, that a sentence through a variance, some type of modification, would have been appropriate at the guideline range contemplated by the parties. I moved specifically for that in my sentencing memorandum, which is in the sealed joint appendix, on the basis of the interest of justice and for all of the other mitigating factors in the case. The government never addressed that. So the government made it a decision. But this is not a C plea, so you can't bind the court. The only thing you can do is have the government disclose real facts and stick by its agreement. And that's all I asked for. Okay, well, and the new judge is free to do what it wants and do the fact of the pure meth. Of course. And the government just failed to perform.  It certainly failed to perform. It agreed on the basis of a mistake of fact. It turns out that it was pure meth. They didn't know that. But even under the Warner case, even in the Warner case where there was a mistake, it's your case, even in the Warner case where there was a mistake of fact based on whether the underlying crime in the gun case in Warner was a felony, the government came out at the sentencing hearing and still recommended the original plea agreement. They made a disclosure, the government admitted that they had failed to analyze the felony properly, but the government came to the sentencing hearing and said, despite our error, judge, we're asking for the court to impose a sentence for Mr. Warner without the four-level enhancement. That would have been the honorable thing. That would have been in keeping with our plea agreement. That never happened. Ms. Wesley did the opposite. Ms. Wesley advocated for a higher sentence that was inconsistent with our agreement. Did the agreement have a provision that the government would recommend a sentence? In Warner? No, here. No. Well, then the government doesn't have to recommend any sentence then under this plea agreement. Not a specific sentence, but it still was required to recognize the drug quantity stipulation, which we all know. Well, it would, but it can't misrepresent the facts. It has to make the disclosure about what the lab showed. Absolutely. And it did. We didn't quarrel with that. The government is not obliged, like in Warner, is not obliged to recommend a variance or to recommend a downward departure or to recommend a low end of the guidelines. Well, there is a low end recommendation in our plea agreement. It is? There is a low end. The government makes it? Absolutely. Okay. And John, that's what I asked you. Right. Does the government? No, but you said specific sentence, which I thought you meant a number or a year. So there's an obligation in this plea agreement to recommend the low end of the guidelines. And the government did, but they recommended a low end of a guideline that was based on a new drug that we didn't know anything about that was almost twice as high than what we initially contemplated. I know all that. It was a breach. It was a breach. It was a breach. It was a breach. And you know, I don't have. I don't understand why it's a breach. I think it's a mutual mistake of fact. We apply contractual. One way or the other. Well, I think there may be even other ways to look at it, but we believe it was a breach and we think he didn't receive the benefit of his bargain. It was a material element. Oh, I agree with that. I think that's true. That drug quantity stipulation is the reason you enter into a plea agreement. These plea agreements. Okay. I could show the plea agreements to the real estate lawyers over here and the commercial lawyers and they'd say, I don't know how you get anyone to sign that. Okay. And we've talked about that before. These plea agreements are not very favorable to defendants, but I'll tell you what is. The drug quantity stipulation. That's the reason. That's the inducement. That's the only reason to sign this. Otherwise, we plead to the indictment in our district. Matter of fact, generally our approach is to seek a way to settle a case without a plea agreement. That's our first move in our district because these non-binding plea agreements really don't give much to our clients. Or we seek a C plea. Something along those lines. But what matters in a non-binding plea agreement in a federal drug case in the Northern District of West Virginia is that drug quantity stipulation. Sometimes you might have a min-man at play. But even now, now the government won't agree to waive a min-man or set aside a min-man. So all you have is the drug quantity stipulation and if you take that away from someone like Johnny Edgell, the plea agreement's worthless. I think I've made my point. The only three cases that you really have to look at, because I think this is relatively straightforward, is Warner, Dawson, and Peguera. We're asking for a specific performance. If the court believes in another remedy, then we'd like an opportunity to have that. That's my only problem with your whole argument, is you're asking the government to specifically do what? Go to a sentencing hearing and ask the court to recognize the original guideline range. There's a lot of cases out there where that's exactly what happens. I was sort of surprised at how often this comes up. And there's that first circuit case where the lawyer gets up and says, new facts. We didn't know about them. We stand by our agreement. Right. We're disclosing them, candor to the court, but we stand by our agreement. We're urging you to impose. We've done it before. We had a non-binding plea agreement fall apart on us about 10 or 15 years ago. And Mr. Warner came right before. The defendant in a gun case was sentenced to almost 10 years. Our plea agreement contemplated 46 months. Mr. Warner got up here and said, I stand by the plea agreement. We're asking for a sentence of 46 months. He did it years after. And we've done this before. It just didn't happen. In this case, I think it was a mistake. I think Mr. Warner acted in good faith. I think it just was not handled appropriately. There were two prosecutors involved. I think that made it even more complicated. And I don't know the circumstances why. But it just fell apart. And we're asking for the court to please help us correct it. I understand. So the risk, really, even under your suggested remedy, is seven more months, really, right? When there will be the 37 will be the highest. And what I mean by the risk, meaning that if the government goes back, I understand you clearly that I want, and I suggest, the low end of the guidelines that's consistent with the stipulated amount of meth. Right, right. 10 months. 10 months. But if the district court disagrees with that, knowing as a matter of fact what actually is, that is the pure substance we're dealing with, 37 months would be the high end. So potentially you could get seven more months. That's the risk to your client, basically, right? Potentially. Potentially. But obviously, but the benefit is that 10 months, that's what you wanted. Right. Right. OK. That's all I have. Thank you. Thank you very much. All right. Mr. Warner. Thank you and good morning. And yes, my name is Steve Warner. I'm with the US Attorney's Office, obviously, here on behalf of the government. Let me just ask you at the start. Is that arrangement consistent with your viewing of the case? That is, we send it back to a new district judge, have the full disclosure, and have you say we stick by our agreement? Well, Your Honor, I would argue the plain error problem with that is that there's no reason to believe there will be a different result. Well, that doesn't matter. That we can't predict. A new judge is going to look at it in view of the error. This judge looked at it. The plea agreement clearly was entered into by both parties under a false assumption. And so in order to keep the air pure, we get another judge looking at it with the full disclosure, and the US Attorney basically saying, we stand by our agreement. But on remand, the next district judge would have to make the same guideline findings that Judge Keeley made, because the court can't make findings that aren't true. Yeah, but the court could do a bunch of things, couldn't they? The court could say, the parties entered into this agreement. It's a reasonable agreement, and I'm going to do a variance and go down to 18 months. I would argue to that is that. I'm just saying could, right? Court could have. Another court could. Yeah. But I mean, my problem is we can't guess. Your harmless error, that's going to come out the same anyway. And the problem I have, if you have a new district judge in this type of circumstance, it's we can't forecast what the judge is going to do. Well, I would argue that there was nothing wrong with the way the district court handled the downward variance motion. There's no allegation she did something wrong. She assessed the facts, 3553A, and made a fair ruling on the downward variance motion. So what Mr. Walker wants, and my friend wants, is a second stab at that downward variance. They just want to stab at it where the government does what it said it would do in the plea agreement. That doesn't seem too much to ask. The government said it would advocate for a 10-month sentence. It didn't do it. No, we did not. You said low end of the guideline range, and everyone understood what the low end of this guideline range would be because of the stipulation. We stipulated to less than five grams of junk methamphetamine. And we also agreed to recommend the low end of the guideline range. I understand that. But there were other terms in the plea agreement, too, such as that we retain the right to under- Every court should look at that. Maybe you want us to split with all of these courts, the Eighth Circuit, Third Circuit, the Eleventh Circuit. They've all said that that kind of general reservation of rights does not trump the more specific stipulation in the contract. You want us to disagree with all of those courts? Oh, and I've studied that, too. Certainly not, Your Honor. The other point along that, Judge Harris's line of questioning is it looks to me like the substantial negotiations focus around how much time I'm going to get. And the critical elements is the drug and the amount of drug. That's really, in this case, would dictate the length of the sentence. Maybe other things, relevant conduct and so forth, come in, but the negotiations center on the drug and the amount of drugs. And everybody believed that was reasonable. And everybody anticipated, in view of that, that the guideline range was, was it 10 to 16 months? 10 to 16 months. And so you agreed to recommend that the low end of the court. With that guideline, we could be expected to go up to 16 months. Yes, Your Honor. I'd like to argue one more thing, if I could. Under contract principle, I would argue that Mr. Edgell assumed the risk for four reasons. One is that he was his drug. Can I just ask, was he unnoticed that this lab report was Page 100 of our discovery material, is the report of it going to the lab or test? So you think he was unnoticed that this lab report was outstanding? Your answer is yes? No, he wasn't unnoticed that it was outstanding, but he was unnoticed. But you guys were, right? Didn't the government know the lab report was outstanding? Why didn't you assume the risk? Why did you enter into a plea agreement without waiting for the lab report? Isn't the most sensible answer here, that if the government really cares what the lab report is going to show, it ought to wait till it gets it before it goes into a plea agreement and stipulates? Well, quite frankly, Judge, I've been doing methamphetamine cases for 20 years. I know meth labs in the majority of my caseload. And Mr. Edgell had remnants of a meth lab at his house. I don't think you just answered, but- To me, it looked like junk methamphetamine. It sounded like a junk methamphetamine. So you took a reasonable calculated risk, I think I know what this is, and you didn't wait for the lab report. Why is, I mean, I don't understand why the government should now be relieved of the calculated risk it took? Because the language in the plea agreement clearly said that he assumes that risk. If the district court doesn't accept the stipulation- No, but there's nothing in the thing that says, he assumes the risk, that if a lab report comes back, we can change the stipulation. But it does provide that I have the right to correct inaccuracies in the facts in the anticipated pre-sentence report. And it's Mr. Edgell's methamphetamine. He should know what he was selling. But your promise was based on your recommendation. That's all. You're right. He took the risk that the court may have disagreed with your recommendation. But that's what he was saying. Counselor's right, it's that stipulated quantity that drives the sentence, and that's what he wanted, and that's what you promised to give him, that. And you're right. There's no fault of the government that turned out to be something different. Nobody's saying that. But what isn't different is that you still had an obligation to make the recommendation at the amount that was there. And the court now knows the facts and can decide that appropriately. But that's what they asked for, and they didn't get that. And I think Judge Harris raised a good question and inquiry about in terms of who assumed the risk. And you set it up very well, because you had 20 years of experience, and you felt that this was correct, the quantity. You didn't do it out of any sympathy at all and other external circumstances that changed. It might be different, but you looked at it in a context of 20 years of seeing it, and you figured this was junk meth. And that's nothing wrong with that. It happens all the people make criticism of you at all. But at some point, that's what. For example, this really is a question whether or not this violates the colloquy in Rule 11, that kind of thing, in terms of the inquiries. Has any other promise been made to you? And therefore, that's the basis on which you enter? Any other that sort of boilerplate language? And then that was the promise that was the, as the press would say, the piece de resistance that made him do that. Then you're going to say, I think he ought to be sentenced at the low end of the guideline range that is associated with the stipulated quantity. That's simple. That's all. And you're right. You can't determine the future with the judge, but that you could do. And that's what contracts are. You keep the promise where you can. You stay in your lane. There's nothing that made it go out of your lane that happened afterwards. You were honest with the court, and you did that. The fourth right is that you have an obligation to do that. But you still have an obligation of this to do that. The promise you made, that didn't change. The language of the plea agreement was that we would recommend the low end of the applicable guideline range. Now, I know Mr. Edgell was looking at the drug weight and assuming that that would be the 10-month sentence. But the language, it was clear that it's the applicable guideline range and that I have a right to correct the record, and that if the judge doesn't go along with it, he can't withdraw. So not happy with the case at all, but we did recommend the low end of the applicable guideline range, even though it was now a new guideline range that we didn't anticipate. So your argument, as I understand it, is that there was no breach in this case. It was a mistake of fact, not a breach. And so no remedy is warranted at all. Well, I'd like to continue to argue the plain error of the third point of the plain error test, that on remand, the next judge will have to make the same guideline findings. And the question is, then, will he vary downward or not? Well, let me go back to my original question. Judge Harris has pointed out some of these cases where they try to keep the agreement in some form. But if it's a mistake of fact and we apply contract principles, shouldn't we, if we're really going to be pure, vacate the plea agreement and let you guys start over? Well, first of all, I'm surprised by that, because I've been ahead of you. Well, I'm just going to normal contract. I don't know if that's the practice in all the courts where they've done this. But it seems to me, if you entered into on a mistaken fact, and they entered a mistaken fact, and both of you assumed the guideline range would follow those mistaken facts, and it turns out the facts turned out to be a mistake, then it's not a very good agreement at common law. And there's a doctrine that if you both are under the mistake of fact, you can end it. If one party is under mistake, then you're not. But if you're both under mistake, the normal thing is, OK, let's start over. But maybe the analysis is when you enter into contracts, there are risks here and there, shifting risks. And you did have these rights to correct things, but you signed the agreement with the understanding that he was going to get, in your own mind, as manifested by the agreement, that he'd get between 10 and 16 months. And you were going to recommend at the low end. That's right. That's right. And he thought that, too. And then all of a sudden, the lab report comes back, which is a normal procedure, too, and shows that it's 30 to 37 months. Well, I think we understand it all, and I think it ought to be clear that I don't think fault can be attributed to the government. I think the question is, in this type of a circumstance, what is the appropriate remedy, taking into account the defendants' negotiations, also, and expectations? I mean, contracts are basically documented expectations, aren't they? It's to regulate the expectations of the parties. Well, certainly, if I had to choose between remedies, I certainly would prefer the remand for resentencing than have to try the whole case over, obviously. Well, my guess is they wouldn't retry it. You guys would negotiate another agreement. Something would happen. You never know what Mr. Walker might take me to the wall. So I certainly do want to still argue that, if you're considering this new remedy, that he did assume the risk. He was the one selling. It was his drugs. He should know what he was selling. We didn't. And, you know, all the more reason to keep the quantity where it was. Falsely. That's not false. How is that false? It's false to say in the plea agreement that it's junk meth when he knew it was pure meth. We didn't know that until the labor court came back. Oh, I see. He made a false statement in the plea agreement? Well, I can't tell what is in his mind, but we would say he assumed the risk that he knew what he was selling. We didn't know what he was selling. We assumed it was junk. It was a good agreement for him because it was pure meth. That doesn't make it a false agreement. It means he got something of value out of this agreement. Yeah. Well, I still argue that he assumed the risk because it was his drugs and he should know what he had. Maybe he read all the case law and all these other circuits that say, no matter what, the government's going to have to stand up there and argue for 10 months. But he also knows the government would have had to disclose. Right. But on the plus side, they're going to have to keep arguing for 10 months until they're blue in the face. Phew. That'll probably make – I bet that'll make a difference. Maybe I'll get a few months off. Thank you, Judge. I have nothing further. Nothing further? Okay. Thank you so much. Appreciate it. All right, Mr. Walker, do you have anything further? Only if the Court has additional questions. There being none, I think we're finished. Thank you very much. I'm good. Do you want a break? We'll come down to Greek Council and proceed to our next case. Thank you.
judges: Roger L. Gregory, Paul V. Niemeyer, Pamela A. Harris